## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **KASON VEASLEY**, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**DIETZ & WATSON, INC.**, a corporation,<br><br>Defendant. | Case No.: 2:25-cv-7152<br><br>Hon.:<br><br>Mag.: |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Kason Veasley ("Plaintiff"), hereby brings this Collective and Class Action Complaint against Dietz & Watson, Inc. ("Defendant") and states as follows:

## INTRODUCTION

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all others similarly situated, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq*., and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq*. and common law. Plaintiff's allegations herein are based upon knowledge as to matters relating to himself and upon information and belief as to all other matters.

2.     According to its website, "Dietz & Watson is a premium meat and cheese company located in Philadelphia, PA."[1]

3.     Defendant employs and previously employed non-exempt hourly employees ("Hourly Employees"), including Plaintiff, to facilitate its operations.

---

[1] *See* https://www.dietzandwatson.com/faqs (last visited Sept. 22, 2025).

4. Plaintiff is currently employed as an Hourly Employee as a machine operator at Defendant's production facility in Baltimore, Maryland.

5. Other Hourly Employees are and were employed at one of Defendant's three (3) manufacturing facilities located in Philadelphia, Pennsylvania; Baltimore, Maryland; and Corfu, New York. These facilities are involved in the production and distribution of Defendant's deli meats, cheeses, and sausages.

6. At all relevant times, Defendant controlled Plaintiff and its Hourly Employees' work schedules, duties, protocols, assignments, and employment conditions.

7. Due to the nature of its operation, Defendant required Plaintiff and similarly situated Hourly Employees to wear company-issued uniforms and protective clothing during their work shifts in order to comply with food-safety and health regulations.

8. The company-issued protective clothing and safety gear included, but was not limited to, bump caps, hair nets, beard nets, plastic smocks, gloves, steel-toed boots, bootstraps and/or earmuffs (hereinafter referred to as "personal protective equipment" or "PPE"). [2]

9. During their shifts, Plaintiff and similarly situated Hourly Employees were required to clock in on a computer terminal, however, Defendant only paid Plaintiff and its Hourly Employees based on their scheduled shift start and end times, not on their clock-in/out times and not on the time that Plaintiff and all other Hourly Employees performed their first and last principal activities of the workday.

10. Defendant required its Hourly Employees to report to their workstations and begin their activities at their scheduled shift start time.

---

[2] The exact required PPE may have varied slightly from department to department and facility to facility, however, the PPE required was either the same or substantially similar across all departments and facilities.

11.     However, due to the extensive PPE donning, doffing and walking process described herein, Plaintiff and Hourly Employees spent sixteen (16) to twenty-five (25) minutes per day before and after their scheduled shifts completing their required PPE donning, doffing and walking activities.

12.     Consequently, Defendant's timekeeping system failed to account for all of the time Plaintiff and all other similarly situated Hourly Employees spent donning, doffing and walking.

13.     Defendant required Plaintiff and similarly situated Hourly Employees to change into ("don") the PPE at the worksite and walk to their timekeeping locations *before* clocking in for their scheduled work shifts.

14.     Defendant also required Plaintiff and all similarly situated Hourly Employees to complete a sanitation process which consisted of washing their hands, neck and face *before* clocking in for their scheduled work shifts.

15.     Similarly, Defendant required Plaintiff and similarly situated Hourly Employees to walk from their timekeeping locations and to the locker room to change out of ("doff") the PPE at the worksite *after* clocking out for their scheduled work shifts.

16.     Defendant required Plaintiff and similarly situated Hourly Employees to don and doff the PPE at Defendant's manufacturing facilities to ensure compliance with federal and state governmental safety, health, and food regulations and mandates.

17.     The mandatory pre-shift and post-shift donning, doffing, sanitation, and walking process was compensable because such activities were integral and indispensable to Plaintiff and the Hourly Employees' principal work activities; Defendant required that the PPE be donned and doffed at the worksite and government regulations mandated that Plaintiff and all other Hourly Employees wear such PPE during their work shifts.

18.     Plaintiff and all other Hourly Employees spent substantial amounts of time sixteen (16) to twenty-five (25) minutes each shift sanitizing, donning and doffing the PPE and walking to and from the production areas before and after their work shifts and before and after clocking into and out of Defendant's timekeeping system, respectively.

19.     Defendant knew or should have known that the time spent by Plaintiff and its Hourly Employees in connection with the pre- and post-shift off-the-clock work was compensable under the law. Indeed, in light of the explicit U.S. Department of Labor guidance and binding Supreme Court precedent cited herein, there is no conceivable way for Defendant to establish that it acted in good faith.

20.     Despite this knowledge, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

21.     Defendant violated the FLSA by knowingly suffering or permitting Plaintiff and similarly situated Hourly Employees to work in excess of forty (40) hours during a workweek without paying overtime compensation at a rate of 1.5 times the regular rate.

22.     Plaintiff seeks a declaration that his rights, and the rights of the putative collective/class members were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

23.     At the earliest time possible, Plaintiff will request a Court-authorized notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employee who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

24.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to

28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

25.     Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA

claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained

against any employer . . . in any Federal or State court of competent jurisdiction."

26.     The Court has supplemental jurisdiction over the asserted state law claims pursuant

to 28 U.S.C. § 1376 because the claims are so related to the FLSA claims as to form part of the

same case or controversy.

27.     Defendant's annual sales exceed $500,000 and it has more than two employees, so

the FLSA applies in this case on an enterprise basis. Defendant's employees engaged in interstate

commerce and therefore they are also covered by the FLSA on an individual basis.

28.     This Court has personal jurisdiction over Defendant because Defendant conducts

business within the state of Pennsylvania, employs individuals within the state of Pennsylvania, is

registered with the Pennsylvania Office of the Secretary of State, and maintains its principal place

of business in the state of Pennsylvania.

29.     Venue lies in in this District pursuant to 28 U.S.C. § 1391 because the Defendant

is subject to personal jurisdiction in this District.

30.     Defendant's principal place of business is located in Philadelphia, Pennsylvania, so

jurisdiction lies in the Eastern District of Pennsylvania.

## PARTIES

31.     Plaintiff is an adult resident of Baltimore, Maryland and has worked for Defendant

as a non-exempt Hourly Employee at its Baltimore Maryland facility since February 12, 2024.

Defendant compensates Plaintiff through the payment of an hourly rate, most recently $17.00 per hour. Plaintiff Veasley signed a consent to join this collective action, which is attached as **Exhibit A**.

32.     Additional putative Collective members were or are employed by Defendant as hourly employees during the past three years and their consent forms will also be filed in this case.

33.     Defendant Dietz & Watson, Inc. is a New Jersey corporation headquartered in Philadelphia, Pennsylvania. In the state of Pennsylvania, Defendant has a registered agent for service of process listed as 363 Bala Avenue, Bala Cynwyd, Pennsylvania 19004.

34.     Defendant is engaged in an "enterprise" through "common operations" and/or "common control" under the FLSA, 29 U.S.C. §§ 201, *et seq*.

## GENERAL ALLEGATIONS

35.     Defendant paid its Hourly Employees at varying hourly rates.

36.     Defendant's Hourly Employees' jobs are and were full-time positions that require forty (40) or more hours of work in a workweek.

37.     Throughout Plaintiff's employment with Defendant, Plaintiff has regularly worked more than forty (40) hours in a workweek.

38.     Defendant provided training to Plaintiff and its Hourly Employees on, *inter alia*, how to carry out their day-to-day job responsibilities, schedule and attendance expectations, and Defendant's policies. The training that all of Defendant's Hourly Employees received was substantially, if not entirely, the same.

39.     As part of training, Defendant explicitly instructed Plaintiff and other Hourly Employees to complete pre-shift sanitation, donning and walking activities *before* the start of their scheduled shifts and *before* clocking into Defendant's timekeeping system, so that they would be

6

fully prepared to begin work in the required PPE at the start of their scheduled shifts.

40.     Defendant additionally explicitly trained and instructed Plaintiff and other Hourly Employees to complete post-shift walking and doffing activities *after* the end of their scheduled shifts and *after* clocking out of Defendant's timekeeping system.

41.     At the start of each workday, Defendant furnished Plaintiff and its Hourly Employees with freshly laundered and/or new PPE to wear during their scheduled shifts.

42.     Defendant required Plaintiff and other Hourly Employees to don and doff their PPE before and after their work shifts in designated locations within Defendant's production facilities.

43.     Defendant prohibited Plaintiff and its Hourly Employees from donning or doffing the PPE at home.

44.     Defendant likewise prohibited Plaintiff and other Hourly Employees from taking their PPE home or otherwise removing it from Defendant's production facilities.

45.     Defendant further prohibited Plaintiff and its Hourly Employees from leaving the locker room in Defendant's facilities and walking to and/or entering its production area unless Hourly Employees had first sanitized and donned the required PPE. Defendant also restricted access to certain areas of the production facilities, permitting entry only to employees who were properly equipped with the required PPE.

46.     Defendant prohibited Plaintiff and its Hourly Employees from leaving the production areas and returning to the locker rooms without wearing their required PPE.

47.     Defendant prohibited Plaintiff and its Hourly Employees from leaving the facilities without first doffing their PPE and changing into alternative footwear.

48.     Plaintiff and all other Hourly Employees spent substantial amounts of time each shift sanitizing, donning and doffing the PPE and walking to and from the locker rooms and the

production areas before, during, and after their scheduled work shifts.

49.    Defendant, however, failed to compensate Plaintiff and its Hourly Employees for all such compensable time.

50.    Instead, Defendant paid Plaintiff and its Hourly Employees based solely on their *scheduled* shift start times and end times, not the time that Plaintiff and all other Hourly Employees performed their first and last principal activities of the workday.

51.    As a result, Defendant did not pay its Hourly Employees, including Plaintiff, for all hours worked, including overtime.

52.    At all relevant times, Defendant directed and directly benefited from the work Plaintiff and its Hourly Employees performed in connection with the herein-described pre- and post-shift work and was aware it was occurring off-the-clock and without compensation.

53.    Plaintiff's and other Hourly Employees' pre- and post-shift work conferred a benefit on Defendant because the employees began their scheduled shifts fully prepared to perform their duties and sanitized and in the required PPE and doffed such PPE after the conclusion of their shifts. By requiring these work activities to occur off-the-clock, Defendant avoided paying for compensable work and thereby realized a financial benefit.

54.    Upon information and belief, Defendant paid Plaintiff and all similarly situated Hourly Employees pursuant to the same timekeeping and payroll system, which calculated compensation based on scheduled shift start and end times rather than actual hours worked.

A.  **Pre-Shift Donning and Walking Activities**

55.    Pursuant to Defendant's policies, training, and direction, Plaintiff and all other Hourly Employees were required to undertake the following essential work tasks in chronological order after reaching Defendant's locker room:

- Retrieve their shoes, change out of their street clothes, and stow their personal items in their lockers;

- Exit the locker room and participate in a sanitization process which included washing their hands, neck and face;

- Retrieve their freshly laundered uniforms that they would wear that shift (a white lab coat and gloves), boot straps and plastic apron and along with their other required PPE (bump cap, steel toed boots, hearing protection, beard and hair nets)[3] and don their PPE;

- Walk towards the timeclock computer terminals near their respective work areas and "clock in".

56.     This pre-shift donning and walking process took Defendant's Hourly Employees, including Plaintiff, substantial time on a daily basis, ranging from eleven (11) to fifteen (15) minutes per shift, and occurred before the beginning of their scheduled shift start times.

57.     Defendant, however, did not pay Plaintiff or its Hourly Employees for the work time spent donning and walking. Instead, Defendant only paid Plaintiff and its Hourly Employees based on their scheduled shift start times and end times, not the time that Plaintiff and all other Hourly Employees performed their first and last principal activities of the workday.

58.     Consequently, Plaintiff and Defendant's Hourly Employees performed pre-shift work in the range of 11 to 15 minutes per shift.

**B. <u>Post-Shift Doffing and Walking Activities</u>**

59.     After Plaintiff and all other Hourly Employees' scheduled shifts concluded and after they clocked out at Defendant's timeclock computer terminals, they were required to undertake the following essential work tasks in chronological order:

- Walk from the timeclock computer terminals to the sanitization area, where they would remove ("doff") their company uniform (i.e., white lab coats, gloves, boot straps and plastic aprons);

---

[3] Hourly Employees kept their steel-toed safety shoes, bump caps, and ear plugs, inside their lockers.

- Participate in a post-shift sanitization process which included washing their hands, neck and face;

- Entire the employee locker rooms and locate their personal lockers and remove their steel-toed safety shoes, bump camps, beard and hair nets, and ear protection;

- Change out of their work clothes and change into their street clothes and shoes;

- Exit the locker rooms and leave the facility.

60.     The post-shift doffing and walking process took Plaintiff and all other Hourly Employees substantial time on a daily basis, ranging from five (5) to ten (10) minutes per shift, and it occurred after the Hourly Employees' scheduled shifts concluded and after they clocked out of Defendant's timekeeping system.

61.     Defendant, however, did not pay Plaintiff and its Hourly Employees for time spent doffing and walking. Instead, Defendant only paid Plaintiff and its Hourly Employees based on their scheduled shift start times and end times, not the time that Plaintiff and all other Hourly Employees performed their first and last principal activities of the workday.

62.     Consequently, Plaintiff and all other Hourly Employees performed post-shift work in the range of 5 to 10 minutes per shift without compensation.

**C.  Donning and Doffing PPE at Defendant's Worksites Are Principal Work Activities and Compensable Under the FLSA**

63.     Donning and doffing protective clothing and safety gear are principal activities under the Portal-to-Portal Act, 29 U.S.C. § 254, and thus time spent in those activities, as well as any walking and waiting time that occurs after the employee engages in his first principal activity and before he finishes his last principal activity, is part of a "continuous workday" and is compensable under the FLSA.

64.     The determination of whether donning and doffing a safety uniform is compensable begins with *Steiner v. Mitchell*, 350 U.S. 247 (1956), the seminal case on the subject. In *Steiner*,

10

the Supreme Court held that donning and doffing uniforms was compensable when employees handling dangerous chemicals in a wet storage battery factory were "compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities which state law requires their employer to provide." *Id*. at 248. Under these circumstances, the Court had "no difficulty" concluding that these dress-related activities were compensable under the FLSA. *Id*. at 255.

65.     Following the Supreme Court's decision in *Steiner*, the Department of Labor ("DOL") issued regulations providing further guidance about the types of dress-related activities that are compensable under the FLSA. One such regulation, 29 C.F.R. § 790.8(c), describes "principal activity" as follows:

> Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a 'preliminary' or 'postliminary' activity rather than a principal part of the activity.

66.     Most recently, in an advisory memorandum regarding the Supreme Court's decision in *IBP v. Alvarez*, 546 U.S. 21 (2005), the DOL reiterated its view that the FLSA requires compensation for donning and doffing safety gear when the donning and doffing activities must be performed at work. The DOL opined:

> Therefore, the time, no matter how minimal, that an employee is required to spend putting on and taking off gear on the employer's premises is compensable 'work' under the FLSA. … However, donning and doffing of required gear is within the continuous workday only when the employer or the nature of the job mandates that it take place on the employer's premises. It is our longstanding position that if employees have the option and the ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the [worksite].

Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006), available at *https://www.dol.gov/whd/Field/Bulletins/Advisorymemo2006_2.htm#_ftnref2*.

67.    Following the Supreme Court's opinion in *Steiner*, numerous Circuit Courts have endorsed the compensability of donning and doffing safety gear. For example, in *Tum v. Barber Foods, Inc*., 360 F.3d 274, 278 (1st Cir. 2004), the First Circuit noted with approval the district court's opinion regarding compensability of donning and doffing safety gear when wearing such gear is required by the employer and/or government regulation:

> The district court found that the donning and doffing of required gear is an integral and indispensable part of Employees' principal activities. *See generally Steiner v. Mitchell,* 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956) (holding that activities should be considered integral and indispensable when they are part of the principal activities for the particular job tasks); *Mitchell v. King Packing Co.,* 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282 (1956). We agree with the district court's conclusion as to the required gear. In the context of this case, Employees are required by Barber Foods and or government regulation to wear the gear. Therefore, these tasks are integral to the principal activity and therefore compensable. *See Alvarez v. IBP, Inc.,* 339 F.3d 894, 903 (9th Cir. 2003) (holding that donning and doffing which is both required by law and done for the benefit of employer is integral and indispensable part of the workday); *cf.* 29 C.F.R. § 1910.132(a).

*Id*.

68.    In *Franklin v. Kellog Co*., 619 F.3d 604 (6th Cir. 2010), the Sixth Circuit considered the issue of employee compensation for time spent donning and doffing protective clothing and safety gear at the beginning and end of work shifts for employees working with food. The protective gear at issue included hair and beard nets, safety glasses, ear plugs, and "bump caps." *Id*. at 608. The Sixth Circuit applied the Steiner test asking whether the activities of donning and doffing were an "integral and indispensable" part of the principal activity of the employment. *Id*. at 619-20. The Sixth Circuit answered this question in the affirmative, reasoning that the activities were required by the manufacturer, and ensured untainted products and safe and sanitary working

conditions. *Id.* at 620.

69.     In a case, involving the donning and doffing of protective gear at a meat processing

plant, *Alvarez v. IBP, Inc.,* 339 F.3d 894 (9th Cir. 2003), *aff'd,* 546 U.S. 21 (2005), the Ninth

Circuit also applied the *Steiner* test. The court considered whether these activities of donning and

doffing at the beginning and end of a work shift were "integral and indispensable" to the principal

activity of the employment, inquiring whether the activities were "necessary to the principal work

performed and done for the benefit of the employer." *Id.* at 902-03. The Ninth Circuit concluded

that the "integral and indispensable" test set forth in *Steiner* was satisfied with regard to the

donning and doffing of all the protective gear at issue. *Id.* at 903.

### D.  Plaintiff's Walking Time was Compensable Because it Occurred After the Beginning of their First Principal Activity

70.     The time spent by Plaintiff and other Hourly Employees walking to the production

area and from the production area was compensable because it occurred after their first principal

activity and before their last principal activity.

71.     On appeal to the Supreme Court, the employers in *Alvarez* did not challenge the

Ninth Circuit's holding that, in light of *Steiner*, donning and doffing of protective equipment is

compensable under the Portal Act. *Alvarez*, 546 U.S. at 32. Instead, the employers appealed a

separate ruling regarding the compensability of walking time. *Id*. The Supreme Court held that

walking time is compensable if it occurs after the beginning of the employee's first principal

activity and before the end of the employee's last principal activity. *Id*. at 37.

72.     In the wake of the Supreme Court's decision in *Alvarez*, the DOL issued an advisory

opinion memorandum stating, in pertinent part,

> The Supreme Court's unanimous decision in *Alvarez* holds that employees who
> work in meat and poultry processing plants must be paid for the time they spend
> walking between the place where they put on and take off protective equipment and

the place where they process the meat or poultry. The Court determined that donning and doffing gear is a "principal activity" under the Portal to Portal Act, 29 U.S.C. 254, and thus time spent in those activities, as well as any walking and waiting time that occurs after the employee engages in his first principal activity and before he finishes his last principal activity, is part of a "continuous workday" and is compensable under the Fair Labor Standards Act (FLSA), 29 U.S.C. 201 *et seq*.

Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006), available at

*https://www.dol.gov/whd/FieldBulletins/AdvisoryMemo2006_2.htm#_ftnref2* (footnote omitted).

### E. **Defendant Breached Its Contractual Obligations to Pay Plaintiff his Regularly Hourly Rate for Each Hour Worked**

73.    In approximately February 2024, Defendant offered Plaintiff the opportunity to work for it as an Hourly Employee.

74.    In consideration of Plaintiff's work as an Hourly Employee, Defendant promised to pay Plaintiff an hourly wage for each hour he worked for Defendant.

75.    In approximately February 2024, Plaintiff accepted Defendant's offer of employment with the understanding that his base hourly rate would be paid for all hours worked under forty (40), and 1.5 times his hourly rate would be paid for all hours worked over forty (40) in a workweek. Plaintiff's acceptance created a binding and valid contract between Defendant and Plaintiff

76.    Plaintiff performed and fulfilled his duties under his contract with Defendant by carrying out his job responsibilities, which included, but were not limited to, the donning and doffing, sanitation, and walking activities described herein.

77.    However, throughout Plaintiff's entire employment with Defendant, Defendant repeatedly and systematically breached its contract with Plaintiff by not paying Plaintiff his regular hourly rate of pay, plus any overtime pay required by applicable law, for the mandatory donning, doffing, sanitation, and walking activities described herein.

78.    Defendant's failure to pay Plaintiff for each hour of work he performed and that was required of him as an Hourly Employee, as well as applicable overtime, was a material breach by Defendant of the parties' contract.

79.    As a result of Defendant's breach, Plaintiff was deprived of wages owed to him under the contract, including "gap time" wages and unpaid overtime.[4]

80.    Upon information and belief, all of the other Hourly Employees who worked for Defendant had a similar valid contract with Defendant.

81.    Upon information and belief, Defendant repeatedly and systematically breached its contracts with all of its Hourly Employees in the same way that it breached its contract with Plaintiff.

82.    Defendant's contractual promises to pay Plaintiff's and each Hourly Employee's applicable hourly rate for each hour worked and 1.5 times their applicable hourly rate for all overtime worked are evidenced by, among other things, each earnings statement issued to them.

83.    Defendant's Hourly Employees are owed wages at their applicable contractual hourly wage rates for the time that they worked off-the-clock during their employment with Defendant, including unpaid "gap time" wages and overtime wages.

84.    Defendant's Hourly Employees earned these wages the moment they performed the off-the-clock work, and the wages were due to be paid to them no later than the pay day for the period in which the off-the-clock work was performed.

85.    These off-the-clock hours were not peripheral tasks for which Plaintiff and Defendant's Hourly Employees were not owed additional compensation. Instead, the off-the-clock

---

[4] "Gap time" refers to time that is not covered by the FLSA's overtime provisions because it does not exceed the overtime limit, and to time that is not covered by the FLSA's minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their weekly wages are averaged across their actual time worked.

work performed by Defendant's Hourly Employees pursuant to Defendant's express instructions and training, constituted principal work activities that were integral and indispensable to their work and were required to be performed at Defendant's facilities. Accordingly, Defendant was contractually obligated to pay its Hourly Employees for this time at the applicable regular and overtime hourly rates at which they were employed.

86.     The fact that Defendant deliberately chose not to compensate Plaintiff and its Hourly Employees for this work, and that the off-the-clock work was performed before and after their scheduled shifts, does not somehow relieve Defendant of its contractual obligation to pay Plaintiff and its Hourly Employees for this time.

87.     Defendant was contractually obligated to pay Plaintiff and its Hourly Employees their regular rates of pay for *all hours worked*, including hours worked before and after their scheduled shifts, because that is what the parties agreed to in their contract.

**F.    The Off-the-Clock Work Results in Viable "Gap Time" Claims**

88.     "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, and "Overtime Gap Time" claims are weeks in which an employee has worked over 40 hours in a given week but also seeks recovery for unpaid work under 40 hours in the same week." *Kinkead v. Humana at Home, Inc*., 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *Conner v. Cleveland Cty., N.C*., 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

89.     Plaintiff and Defendant's Hourly Employees regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

90.     During the weeks that Plaintiff and Defendant's Hourly Employees did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight time wages, in breach of Defendant's contracts with its Hourly Employees.

## FLSA COLLECTIVE ACTION ALLEGATIONS

91.    Plaintiff brings this action pursuant to 29 U.S.C § 216(b) of the FLSA on behalf of himself and on behalf of:

*All current and former Hourly Employees who work or have worked for Defendant at any of its production facilities at any time during the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

92.    Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

93.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the members of the FLSA Collective.

94.    Plaintiff and putative Collective Members are "similarly situated" as that term is used in 29 U.S.C § 216(b) because, among other things, all such individuals were subject to Defendant's pre-shift and post-shift donning, doffing and walking but such time was not included within their hours worked as required by the FLSA.

95.    Consistent with Defendant's policies and practice, Plaintiff and the FLSA Collective members were not paid for all straight time and/or premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

96.    Defendant assigned and/or was aware of all of the work that Plaintiff and members of the FLSA Collective performed.

97.     Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

98.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members. This policy and pattern or practice includes, but is not limited to:

    a.  Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all regular hours that they worked off-the-clock in non-overtime workweeks;

    b.  Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all overtime gap time and premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek; and

    c.  Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

99.     Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

100.    Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

101.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policies, or plans; and (d) their claims are based upon the same factual and legal theories.

102.    The employment relationships between Defendant and every proposed FLSA Collective member is the same. The key issues – the amount of uncompensated pre- and post-shift

donning and doffing and walking time – do not vary substantially or materially among the proposed FLSA Collective members.

103.    These similarly situated individuals are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq*.

104.    Court-authorized notice pursuant to 29 U.S.C § 216(b) is proper and necessary so that these employees may be readily notified of this action through direct U.S. mail, email and text to allow them to opt in for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the FLSA.

105.    Upon information and belief, there are hundreds of similarly situated current and former employees of Defendant who were not paid their required wages and who would benefit from the issuance of court-authorized notice of this lawsuit and the opportunity to join it.

## RULE 23 MARYLAND CLASS ACTION ALLEGATIONS

106.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 (b)(3) on behalf of:

> *All current and former Hourly Employees who work or have worked for Defendant at any location in Maryland during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Maryland Class"). Plaintiff reserves the right to amend this definition if necessary.

107.    Plaintiff is unable to state the exact size of the Rule 23 Maryland Class but, upon information and belief, avers that it consists of more than 100 people. Rule 23 Maryland Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

108.    There is a well-defined community of interests among Rule 23 Maryland Class

members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Maryland Class. These common legal and factual questions include, but are not limited to, the following:

    a.  Whether Rule 23 Maryland Class members performed unpaid pre- and post-shift work activities, and if so, whether such work activities are compensable;

    b.  Whether Rule 23 Maryland Class members are owed wages for time spent performing pre- and post-shift work activities, and if so, the appropriate amount thereof;

    c.  Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Maryland Class member regular wages or minimum wage for each non-overtime hour worked;

    d.  Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Maryland Class member overtime compensation for each overtime hour worked; and

    e.  Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the state laws, constitutions, and wage acts applicable to the members of the Rule 23 Maryland Class.

109.    Plaintiff's claims are typical of those of the Rule 23 Maryland Class in that he and all other Rule 23 Maryland Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Maryland Class members' claims and his legal theories are based on the same legal theories as all other Rule 23 Maryland Class members.

110.    Plaintiff will fully and adequately protect the interests of the Rule 23 Maryland Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Maryland Class.

111.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Maryland Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

112.    This case will be manageable as a Rule 23 class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

113.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

114.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of:

> *All current and former Hourly Employees who work or have worked for Defendant at any of its production facilities during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

115.    The Rule 23 Nationwide Class members are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

116.    There is a well-defined community of interest among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

      a.   Whether the time Rule 23 Nationwide Class members spent on pre- and post-shift work activities is compensable time;

      b.   Whether Rule 23 Nationwide Class members are owed wages for time spent performing pre- and post-shift work activities, and if so, the appropriate amount thereof;

      c.   Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

      d.   Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

117.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that he and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

118.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

119.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because inter alia, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own give the relatively small

amount of damages at stake for each individual along with the fear of reprisal by their employer.

120.    This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

121.    Because the elements of Ruel 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorial rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

122.    Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## FLSA COLLECTIVE ACTION
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

123.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

124.    At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

125.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

126.    Defendant is an employer within the meaning of 29 U.S.C § 203(d).

127.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

128.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and

the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

129.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities performed, were all non-exempt employees.

130.    Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

131.    The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

132.    The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq.*

133.    At all relevant times, Defendant had a policy and practice of willfully refusing to pay Plaintiff and the FLSA Collective members the legally required amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA.

134.    The off-the-clock work Plaintiff and the FLSA Collective performed every shift was an essential part of their job duties and the activities and the time associated with the activities was not *de minimis*.

135.    At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and the FLSA Collective members to perform pre- and post-shift work off-the-clock, every shift, and failed to pay these employees their regular hourly rate for all

hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

136.    As a result of Defendant's willful failure to compensate Plaintiff and the putative collective members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including but not limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

137.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage including shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

138.    As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

139.    Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities but did not.

140.    Plaintiff and all others similarly situated are entitled to back pay, liquidated damages, interest, attorneys' fees and costs, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

**COUNT II**
**RULE 23 MARYLAND CLASS ACTION**
**VIOLATIONS OF THE MARYLAND WAGE AND HOUR LAW ("MWHL"),**
**MD. CODE ANN., LAB. & EMPL. §§ 3-401, *et seq.* AND MARYLAND WAGE PAYMENT**
**AND COLLECTION LAW ("MWPCL"), §§ 3-501, *et seq.***

141.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

142.    At all times relevant to the action, Defendant was an employer covered by the mandates of the MWHL and MWPCL, and Plaintiff and the Rule 23 Maryland Class members were employees entitled to their protections. *See* Md. Code Ann., Lab. & Empl. §§ 3-401 *et. seq.* and §§ 3-501 *et. seq.*

143.    The MWHL, Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.*, requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay for hours worked in excess of forty (40) per week. Md. Code Ann., Lab. & Empl. §§ 3-415; 3-420.

144.    Md. Code Ann., Lab. & Empl. §§ 3-427(a)(1)-(3) provides that an employee who is not paid in accordance with the Maryland Wage and Hour Law "the employee may bring an action against the employer to recover the difference between the wage paid to the employee and the wage required under this subtitle as liquidated damages; an additional amount equal to the difference between the wage paid to the employee and the wage required under this subtitle as liquidated damages; and counsel fees and other costs." Md. Code Ann., Lab. & Empl. §§ 3-427(a)(1)-(3).

145.    The MWPCL entitles employees to compensation for every hour worked in a workweek. *See* Md. Code Ann., Lab. & Empl. §§ 3-501, *et. seq.*

146.    Under MWPCL § 3-502, "Each employer shall set regular pay periods; and […] shall pay each employee at least once every 2 weeks or twice in each month." Md. Code Ann.,

Lab. & Empl. § 3-502.

147.    Under MWPCL § 3-505, "each employer shall pay an employee or authorized representative of an employee all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Code Ann., Lab. & Empl. § 3-505.

148.    Additionally, Md. Code Ann., Lab. & Empl. §§ 3-507.2(a)-(b) provides that "if an employer fails to pay an employee in accordance with §3-502 or § 3-505 of this subtitle, after 2 weeks have elapsed from the date on which the employer is required to have paid the wages, the employee may bring an action against the employer to recover unpaid wages. If, in [such] an action […], a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs."

149.    As discussed herein, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Maryland Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate, plus any overtime pay required by applicable law, in consideration of the work duties Plaintiff and the Rule 23 Maryland Class members performed on Defendant's behalf.

150.    For example, Defendant offered to compensate Plaintiff at a minimum of $17.00 per hour, plus any overtime pay required by applicable law, if he agreed to perform services for Defendant as an Hourly Employee. Plaintiff accepted Defendant's offer and performed under the contract by fulfilling his duties as an Hourly Employee, which included, but was not limited to, the pre- and post-shift work activities required of him, in reliance on the offer.

151.    Evidence of the contract includes Defendant's letters offering employment, pay

statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified rate, above minimum wage for hourly employee work, which Plaintiff accepted and performed, including the unpaid pre- and post-shift work activities described herein, but Defendant failed to perform by paying Plaintiff and the Rule 23 Maryland Class the promised wages for all work.

152.    Upon information and belief, each Rule 23 Maryland Class member, including Plaintiff, was contractually entitled to a minimum hourly rate within the applicable period, in addition to applicable overtime premiums.

153.    Plaintiff and every other Rule 23 Maryland Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

154.    Defendant breached its contractual promises by failing to pay Plaintiff and the Rule 23 Maryland Class for all wages (regular and overtime) owed.

155.    Plaintiff and the Rule 23 Maryland Class also did not receive accurate wage statements that detailed each hour worked and their rate of pay because Defendant failed to include the compensable time discussed herein in the paystubs provided to Plaintiff and the Rule 23 Maryland Class.

156.    Defendant violated the MWHL and the MWPCL by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Maryland Class for the time spent on the work activities described in this Complaint, and for failing to provide Plaintiff and the Rule 23 Maryland Class with accurate wage statements reflecting all hours worked each workday and each workweek.

157.    As a result, Plaintiff and the Rule 23 Maryland Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23 Maryland Class are entitled to recover unpaid wages owed, liquidated damages under the MWHL and treble damages under the MWPCL, costs and attorneys' fees, and other appropriate relief at an amount to be proven at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE BREACH OF CONTRACT**

158.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

159.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class member performed on behalf of Defendant.

160.    Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for Hourly Employee work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

161.    For example, Defendant offered to compensate Plaintiff and the Rule 23 Nationwide Class members at varying minimum hourly rates if they agreed to perform services for Defendant as Hourly Employees. Plaintiff and the Rule 23 Nationwide Class members accepted Defendant's respective offers and performed their duties as Hourly Employees in reliance on the offers.

162.    Defendant breached its contractual promises by failing to pay its Hourly Employees at their fixed, pre-agreed upon hourly rate for all of the hours worked.

163.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate that varied within the applicable period.

164.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock donning, doffing and walking that was required of them in connection with the pre- and post-shift work described herein.

165.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for all the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

166.    Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

167.    Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e. pure "gap time" claims for non-overtime hours/workweeks).

168.    Defendant also breached its duties of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

169.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT IV**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE UNJUST ENRICHMENT**

170.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

171.    This Count is pled in the alternative to Count III, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

172.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendant's benefit.

173.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

174.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

175.    Plaintiff and the Rule 23 Nationwide Class member performed off-the-clock work tasks at the request of and without objection by Defendant.

176.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

177.    Despite this, Defendant did not pay Plaintiff and the Rule 23 Nationwide Class member for all of their work.

178.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

179.    Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

180.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

181.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

a.    An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order certifying this action as a class action (for the Rule 23 Maryland Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's state law claims under the MWHL and MWPCL (Count II);

c.  An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts III and IV);

d.  An Order designating Plaintiff as representative of the FLSA Collective, the Rule 23 Maryland Class, and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

e.  An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

f.  An Order declaring Defendant violated the FLSA;

g.  An Order declaring Defendant's violations of the FLSA were willful;

h.  An Order declaring Defendant violated Maryland wage-and-hour law;

i.  An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, and the Rule 23 Maryland Class the full amount of damages and penalty damages available by law;

j.  An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regular hourly rate;

k.  An Order declaring Defendant was unjustly enriched by the off-the-clock work it required Plaintiff and the members of the Rule 23 Nationwide Class to perform;

l.  An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, Rule 23 Maryland Class, and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

m.  An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

n.  An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

o.  An Order awarding such other and further relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand a trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: December 18, 2025                    Respectfully Submitted,

                                                */s/ Gary F. Lynch*
                                                Gary F. Lynch (PA 56887)
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243
gary@lcllp.com

Jesse L. Young (P72614)
**SOMMERS SCHWARTZ, P.C.**
141 E. Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
(269) 250-7500
jyoung@sommerspc.com

Kathryn E. Milz (IL 6297213)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
kmilz@sommerspc.com

*Attorneys for Plaintiff and the*
*Putative Collective/Class Members*